IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THOMAS RAEL,

    Plaintiff,

v.                                                                                                       No. 1:15-CV-00983-SCY/KK

SMITH'S FOOD & DRUG CENTERS, INC.
and ART SUAZO, individually and as an employee
of SMITH'S FOOD & DRUG CENTERS, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion to Dismiss (ECF No. 17) and Plaintiff's Motion to Remand (ECF No. 22). Defendants contend that Plaintiff's claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a), commonly referred to as Section 301, and, alternatively, fail to state a claim under Fed.R.Civ.P. 12(b)(6).  ECF No. 17. Plaintiff contends that, should the Court determine that Plaintiff's claims are not preempted by Section 301, the Court should remand the case. ECF No. 22.  Having reviewed Defendants' Motion, the relevant law, and being otherwise fully advised, the Court finds that their motion should be **GRANTED**.  Accordingly, Plaintiff's Motion to Remand is **DENIED.**

### I.     BACKGROUND

Plaintiff initially filed his complaint in state district court claiming age discrimination contrary to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 through 634.  ECF No. 1-1. Defendants subsequently removed the case to this Court on the basis of federal question jurisdiction.  ECF No. 1.  Plaintiff then amended his complaint withdrawing the age discrimination claim and adding claims for intentional infliction of emotional distress and prima facie tort. ECF No. 6.

1

In the amended complaint, Plaintiff alleges that he began his employment with Smith's as a journeyman meat cutter in 1989. ECF No. 6 at 1.  As a journeyman meat cutter with Smith's, Plaintiff's employment was covered by a collective bargaining agreement (CBA). ECF No. 18-1. Plaintiff alleges that in 2013, Defendant Art Suazo was promoted to the position of Market Director, thus becoming Plaintiff's immediate supervisor.  ECF No. 6 at 1-2.  Plaintiff alleges that once Suazo became his supervisor, Suazo constantly harassed, belittled, and degraded Plaintiff.  ECF No. 6 at 2. This harassment allegedly consisted of Suazo frequently yelling at Plaintiff that he was moving too slowly and that younger employees could get the job done quicker and better. ECF No. 6 at 2. Plaintiff further alleges that Suazo constantly referred to Plaintiff as "old man." ECF No. 6 at 2.  Plaintiff alleges that, during his employment with Smith's, he injured his back in an on-the-job injury while Suazo was present and that this was the reason he was unable to work as fast as Suazo demanded. ECF No. 6 at 2. Plaintiff alleges that Suazo told him that if Plaintiff did not like the way Suazo treated him, that he could find another job. ECF No. 6 at 3.

Plaintiff further alleges that he complained of Suazo's behavior to various supervisors and executives at Smith's, including store director Jim Armijo and the head of human resources for the New Mexico district of Smith's stores. ECF No. 6 at 2. Plaintiff alleges that these individuals all told Plaintiff that they would speak with Suazo regarding the harassment.  ECF No. 6 at 2.  Plaintiff alleges that, despite these representations, the harassment continued and Suazo never modified his behavior. ECF No. 6 at 2. Plaintiff alleges that he eventually resigned from his position due to Suazo's conduct. ECF No. 6 at 2.

## II.  ANALYSIS

The Court's analysis begins and ends with whether Plaintiff's claims are preempted by Section 301 because, as Plaintiff argues, if the claims are not preempted, the Court should remand his two state law claims. *See Romero v. Mason and Hanger-Silas Mason Co., Inc.*, 739 F.Supp. 1472, 1475 (D.N.M. 1990) ("if a plaintiff asserts state-created legal rights that exist independently of a labor agreement and plaintiff's claims do not rely on the provisions of a collective bargaining agreement, then complete preemption does not apply to the claims and they should be remanded to state court."). Accordingly, because the preemption question is controlling, the Court will not consider Defendants' arguments that Plaintiff fails to state a claim under Fed.R.Civ.P. 12(b)(6).

> Section 301 states:
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has made clear that the preemptive effect of Section 301 is not limited to state claims alleging violations of labor contracts but also includes tort claims relating to what the parties to a labor agreement agreed and any legal consequences that were intended to flow from breach of that agreement. *Allis-Corp. v. Lueck*, 471 U.S. 202, 211 (1985); *see also Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir. 2000) (stating that Section 301 "preempts questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement…whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."). Thus, "[a] state rule that purports to define the meaning or scope of a term in a contract suit therefore is

3

pre-empted by federal labor law." *Allis-Corp.*, 471 U.S. at 210.  Preemption, however, arises only when an "evaluation of the tort claim is *inextricably intertwined* with consideration of the terms of the labor contract." *Id.* at 211. "As long as the state law-claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

### A.  Intentional Infliction of Emotional Distress Claim

To establish a claim of intentional infliction of emotional distress in New Mexico, the plaintiff must prove that (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress.  *Trujillo v. Northern Rio Ariba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607.  Defendant contends that Plaintiff's claim for intentional infliction of emotional distress is preempted under Tenth Circuit precedent.  The Tenth Circuit has routinely concluded that intentional infliction of emotional distress claims are preempted by Section 301—though not always. *See Mock v. T.G.& Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir. 1992) ("This Court has specifically held that claims for intentional infliction of emotional distress are preempted by section 301."); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1214 (10th Cir. 2001) ("We are not required to find preemption in every conceivable claim for intentional infliction of emotional distress which arises from conduct in the workplace" (internal quotation marks and citation omitted)).

Defendant relies primarily on *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015 (10th Cir. 1990).  Similar to the present case, the plaintiff's claim in *Johnson* was based, in part, on allegations that the plaintiff's supervisor repeatedly verbally abused him, including yelling at

4

him and calling him names. *Id.* at 1017. The Tenth Circuit concluded that the plaintiff's claim was preempted because each of the plaintiff's allegations "directly relate[d] to either explicit or implied rights derived from the CBA." *Id.* at 1020. The court further emphasized that the distinguishing feature between the plaintiff's claim and cases in which state-law claims were not preempted was the lack of an independent state-law standard to evaluate the employer's conduct. *See id.* at 1021 ("Oklahoma's tort for intentional infliction of emotional distress does not create an independent method of measuring when an employer's work-related conduct is outrageous."). In such situations, the resolution of the plaintiff's claim will require an examination of the CBA to determine the reasonableness of the employer's conduct. *Id*. at 1020; *see also Garley*, 236 F.3d at 1214 (stating that determining whether a defendant's conduct was outrageous will require construction of the defendant's "rights and obligations under the CBA as that is the reference point against which [the defendant's] actions must be scrutinized"); *Mowry*, 415 F.3d at 1158 (same).

  The need to determine a defendant's rights and obligations under the CBA is especially strong when a plaintiff's allegations relate to conduct subject to the CBA's grievance procedures. For instance, in *Steinbach v. Dillon Companies, Inc.*, the Tenth Circuit stated that a plaintiff's allegation that a manager abused her authority in fabricating an unexcused absence charge would require the court to examine the manager's authority to cancel plaintiff's vacation, require her to return to work, and the propriety of initiating disciplinary proceedings which were "subjects covered by the collective bargaining agreement, and…subjects ordinarily addressed in a grievance procedure." 253 F.3d 538, 542 (10th Cir. 2001).  Similarly, in ruling that the plaintiff's claim was preempted, the Tenth Circuit in *Johnson* emphasized that the plaintiff "could have

5

used the CBA's grievance procedure for any of the allegations in his complaint since all the allegations involved either a suspension, discharge or work-related dispute." *Id.*

Conversely, in *Albertson's Inc. v. Carrigan*, the Tenth Circuit held that the plaintiff's intentional infliction of emotional distress claim was not preempted because the state-law claim could be resolved without reference to or interpretation of the CBA. 982 F.2d 1478, 1482 (10th Cir. 1993). The plaintiff in *Albertson's* alleged that her employer suspended her after falsely accusing her of shoplifting. *Id.* at 1479. Although the Court stated that the same factual issues could be resolved pursuant to the CBA's arbitration procedures, the Court concluded that the claim was not preempted because resolution of the purely factual issue of whether her employer conspired to have her arrested by falsely accusing her of shoplifting did not require interpretation of the collective bargaining agreement. *Id.* at 1482. In reaching this conclusion, the Tenth Circuit relied on *Lingle v. Norge Div. of Magic Chef, Inc.*, which distinguished between "purely factual questions" pertaining to "the conduct of the employee and the conduct and motivation of the employer" and inquiries implicating terms of the collective bargaining agreement. 486 U.S. 399, 407 (1988). Similarly, in *Garley*, the Tenth Circuit held that an intentional infliction of emotional distress claim was not preempted where the claim was based on alleged retaliatory actions by the employer. 236 F.3d at 1214. The Court concluded that determining whether the employer's retaliatory acts were outrageous would not require resorting to the collective bargaining agreement because the claim did not involve construing the employer's contractual rights but instead its motivation for taking the actions. *Id.* at 1213-14.

Upon review of Tenth Circuit precedent, the Court concludes that Plaintiff's intentional infliction of emotional distress claim is preempted. In support of his claim, Plaintiff alleges that Suazo's conduct, including the alleged name calling and harassment, was extreme and

outrageous and caused Plaintiff emotional distress. ECF No. 6.  Plaintiff alleges that Smith's knew or should have known about Suazo's conduct and failed to properly train Suazo.  ECF No. 6. Plaintiff further alleges that Suazo would not have been in the position to harass Plaintiff but for Smith's employment and promotion of Suazo. ECF No. 6.

Like *Johnson*, Plaintiff's claim "directly relates" to a number of "explicit or implied rights derived from the collective bargaining agreement." *Johnson*, 921 F.2d 1015. For instance, Plaintiff alleges that the subject matter of Suazo's harassment was Plaintiff's inability to work as fast as other employees.  Under Section 6.1 of the CBA, Smith's retained the "sole right" to "maintain the discipline and efficiency of the employees." ECF No. 18-2.  Whether Suazo's comments constituted harassment as opposed to an appropriate evaluation of a subordinate's efficiency requires an interpretation of the CBA and is precisely the type of employment dispute the CBA's grievance procedures were designed to resolve.

Further, even accepting Plaintiff's argument that Suazo's comments constituted harassment, the CBA contains a provision on harassment.  Section 26 of the CBA states, "It is specifically agreed by all parties to this Agreement that the use of profanity, raised voices and harassment will not be tolerated in the workplace." ECF No. 18-2.  Confronted with the indisputable fact that the CBA addresses the issue of harassment, Plaintiff argues that, even so, the CBA provides no grievance process for harassed employees and that this language merely states an aspirational goal. ECF No. 21 at 8.  Nothing in the language of this provision however, indicates that intolerance to harassment is merely an aspirational goal of the CBA.  To the contrary, the plain language of the provision indicates that the provision constitutes a material term of the CBA.  Moreover, the CBA's grievance procedures appear to apply to this provision.  Those procedures broadly state that "any dispute or disagreement of any kind or character arising

out of or in any way involving the interpretation or application of this Agreement" shall be submitted in compliance with the dispute resolution procedures of the CBA. ECF No. 18-2.

Similarly, although Plaintiff contends that Section 301 preemption occurs only in the context of intentional infliction of emotional distress claims arising out of disciplinary contexts, the Tenth Circuit has concluded otherwise.  As noted above, allegations that relate to "work-related dispute[s]" that could be submitted for resolution under the CBA's grievance procedures are subject to preemption under Section 301. *See Johnson*, 921 F.2d at 1020 (concluding claim preempted where the plaintiff could have used available grievance procedures to redress his work related disputes, including allegedly harassing behavior by supervisor); *Steinbach*, 253 F.3d at 542 (concluding claims preempted where the allegations involved "subjects covered by the collective bargaining agreement, and [] subjects ordinarily addressed in a grievance procedure.").  Indeed, the Court in *Johnson* specifically repudiated Plaintiff's argument. *See Johnson*, 921 F.2d at 1020 ("We disagree with the district court only to the extent that it limits its preemption to suspensions or disciplinary actions; since the CBA also allows "disputes" to be grieved, we would hold that all of Johnson's allegations are preempted.").  In this case, the grievance procedures also apply broadly to "any dispute or disagreement of any kind." ECF No. 18-2. Accordingly, to the extent Plaintiff's claim is based on Suazo's allegedly harassing behavior, it is preempted by Section 301.

Furthermore, to the extent that Plaintiff's intentional infliction of emotional distress claim is based on Smith's alleged failure to adequately supervise and train Suazo, the claim is also preempted by Section 301.  In *Rivera v. Smith's Food and Drug Centers*, the court stated that "[a]ny duty to effectively train and supervise managers, or breach of such duty, is inextricably intertwined with the issue of discipline." No. 05-1049, 2006 WL 4891275, *6 (D.N.M. Feb. 16,

2006) (unpublished).[1] The Court in *Varela* explained that "if the Court were to find that [the d]efendant was negligent in its supervision of employees, then the Court would be defining how [the d]efendant should reasonably govern the operation of its business." No. 05-440, 2006 WL 709842, *2 (D.N.M. Jan. 24, 2006). As in *Rivera* and *Varela*, in order to determine whether Smith's alleged failure to supervise and train Suazo was sufficient to support a claim for intentional infliction of emotional distress, "it would be necessary to consider the requirements imposed by the [collective bargaining agreement]." *Rivera*, 2006 WL 4891275, *6. Accordingly, such claims are preempted by Section 301.

Finally, the Court does not find the Tenth Circuit's decision in *Albertsons* compels a different result. As the Court clarified in *Steinbach*, under the facts in *Albertsons* "fabrication of shoplifting charges and arrest of an employee, alone, would be outrageous." 253 F.3d at 542. Conversely, the allegations in the present case do not rise to level of the clearly outrageous conduct in *Albertsons* (in which the employer's alleged actions involved criminal conduct rather than a labor dispute) and do not lend themselves to such a clear cut determination. *C.f. Cumpston v. Dyncorp Technical Service, Inc.*, 76 Fed App'x 861, 864 (10th Cir. 2003) ("Because the prohibition on 'harassment' set out in the standards is devoid of descriptive content, and the actions plaintiff complains of are not on their face so inherently or plainly wrongful as to make application of such a label ineluctable, there would be no way of telling whether the standards were violated here without consulting the CBA to assess the opposing

---

[1] The Court's decision relies upon *Rivera* and other unpublished opinions in analyzing the issues presented. A court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that these unpublished opinions have persuasive value with respect to a material issue, and will assist my analyses and the disposition of this case.

rights and privileges of the parties."). Indeed, the allegations in this case are less outrageous than those in *Johnson*, in which a supervisor allegedly attempted to set up the plaintiff by planting a bad product on plaintiff's route and, in a separate incident, claimed that the plaintiff left a bad product with a supplier while knowing the bad product was actually left by a substitute driver. *Johnson*, 921 F.2d at 1017-18. In the present case, whether or not Suazo's comments and actions constitute harassment, they all have a direct nexus to Plaintiff's work and, as a result, fall within the penumbra of the CBA.

### B. Prima Facie Tort

Defendant contends that Plaintiff's claim for prima facie tort is likewise preempted by Section 301 because it is based on the same allegations supporting his intentional infliction of emotional distress claim. ECF No. 18 at 7. Plaintiff does not respond to this argument. Regardless, the Court agrees with Defendants.

The elements necessary to establish a claim for prima facie tort are: (1) an intentional, lawful act by defendant; (2) an intent to injure the plaintiff; (3) injury to the plaintiff; and (4) insufficient justification for the defendant's acts. *Hagebak v. Stone*, 2003-NMCA-007, ¶ 24, 133 N.M. 75. The factual allegations supporting Plaintiff's claim for prima facie tort are nearly identical to the allegations supporting his intentional infliction of emotional distress claim. Plaintiff alleges that Suazo harassed Plaintiff with the intention or knowledge that such acts would cause harm to Plaintiff. ECF No. 6. Plaintiff alleges that the harassment was without justification under the circumstances. ECF No. 6. Plaintiff further alleges that Smith's knew about the harassment and failed to properly train Suazo. ECF No. 6. Finally, Plaintiff alleges that Suazo would not have been in a position to harass Plaintiff but for Smith's continued employment and promotion of Suazo. ECF No. 6.

For the reasons stated above in regard to Plaintiff's intentional infliction of emotional distress claim, Plaintiff's claim for prima facie tort is preempted by Section 301. Consideration of this claim differs only in that the determination to be made is whether Defendants' conduct was justified as opposed to outrageous. As is the case with determining the "outrageousness" of conduct in the intentional infliction of emotional distress context, determining whether the conduct was "justified" cannot be evaluated without resort to the collective bargaining agreement because the claim lacks an independent method of measuring whether the employer's alleged conduct was justified. Similarly, to the extent Plaintiff's claim is based on Smith's alleged failure to train or supervise Suazo, the claim implicates the collective bargaining agreement. *See Rivera*, 2006 WL 4891275, *6. Accordingly, Plaintiff's claim for prima facie tort is preempted by Section 301.

### C. Suits Against Supervisor in Individual Capacity

Plaintiff contends that Section 301 preemption does not apply to preempt claims against a supervisor in his or her individual capacity. Plaintiff cites no authority for this proposition, which the Tenth Circuit rejected in *Steinbach*. As indicated in *Steinbach*, claims may still be preempted under Section 301 when asserted against the supervisor in his or her individual capacity. *See Steinbach*, 253 F.3d at 541 (preempting the plaintiff's claim for tortious interference with contract asserted against supervisor in her individual capacity).

### III. CONCLUSION

Because the Court concludes that Plaintiff's claims are preempted by Section 301, the Court GRANTS Defendants' motion to dismiss (ECF No. 17). "When a party's state law claims are preempted under § 301, the court must either dismiss the claims as preempted or treat them as arising under § 301." *McCrary v. Aurora Public Schools*, 57 Fed. App'x 362, 374 (10th Cir.

2003) (unpublished). "An employee can bring suit under § 301 of the LMRA only if he or she has exhausted the contractual remedies provided in the collective bargaining agreements." *Aguinaga v. United Food and Commercial Workers Int'l Union*, 993 F.2d 1463, 1471 (10th Cir. 1993). Because Plaintiff has not demonstrated that he exhausted available remedies under the collective bargaining agreement, the Court cannot construe Plaintiff's claims as arising under Section 301 and Plaintiff's claims are accordingly dismissed.  In concluding that Plaintiff's claims are dismissed, the Court DENIES Plaintiff's Motion to Remand (ECF No. 22).

    **IT IS SO ORDERED.**

                                               _____
                                               UNITED STATES MAGISTRATE JUDGE
                                               Sitting by Consent